UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

JUL 11 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| TAMIKA GRAHAM | ) | |
| | ) | No. |
| | ) | |
| *Plaintiff* | ) | **1:18CV04761** |
| | ) | **Judge Virginia M. Kendall** |
| v. | ) | **Magistrate Judge Maria Valdez** |
| BOARD OF EDUCATION OF THE CITY | ) | |
| OF CHICAGO | ) | |
| | ) | |
| *Defendant.* | ) | |

## COMPLAINT

Plaintiff, Tamika Graham complains of Defendant Board of Education of the City

of Chicago ("Board") and seeks appropriate judicial relief, attorneys' fees and costs.

### JURISDICTION

1. Plaintiff raises federal claims under 29 U.S.C. § 1140, et seq. ("ERISA"), U.S.C. §

1983, 15 U.S.C. § 1692 et. seq, First Amendment of the United States Constitution,

Fourteenth Amendment of the United States Constitution, 29 U.S.C. § 1166. Jurisdiction

is thus proper under 28 U.S.C. § 1331. Supplemental jurisdiction is proper under 28

U.S.C. § 1367.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the

events giving rise to Plaintiff's claims occurred within the Northern District of Illinois

and the Defendant resides in the Northern District of Illinois.

### PARTIES

3. Plaintiff is an African-American female educator who lives in the city of Chicago.

She is highly educated in that she has earned Masters degrees in Education Leadership

and Early Childhood Education. She has had an excellent professional record, working

1

as a teacher since about 2002, subsequently earning tenure and serving on the local school council for Gale Elementary School as a community advocate.

4. Defendant is a quasi-municipal body that, together with various local school councils, manages and supervises Chicago Public Schools ("CPS"). Defendant is required to provide indemnity within the meaning of 735 ILCS 10/9-102 for damages caused by its employees or agents during the scope of their employment.

5. At relevant times, Forrest Claypool ("Claypool") was the Chief Executive Officer or superintendent of CPS. At relevant times, Janice Jackson ("Jackson") was the Chief Executive Officer or superintendent of CPS.

6. At relevant times, Defendant acted, or threatened to act under color of law within the meaning of 42 U.S.C. § 1983 through its employees, including James Ciesil ("Ciesil"), Ronald Marmer ("Marmer") Jackson and Claypool.

**FACTUAL BACKGROUND**

7. Plaintiff accepted employment with CPS around August 2002 and was a tenured teacher whose employment could only be terminated for cause after full due process hearing at all relevant times.

8. Under Plaintiff's employment agreement with Defendant, Defendant is required to pay Plaintiff an annual salary and all benefits for which full-time, regularly appointed certificated employees are eligible, including medical and retirement benefits.

9. During Plaintiff's employment, the benefits that she participated in, or was eligible to participate in included one or more retirement plans, including one managed by a private company called Great-West Financial.

2

10. A substantial and more than *de minimis* number of employees of private companies, for example, those that manage Chicago area charter schools, were also eligible to participate in, and participated in the CPS benefit programs.

11. One of these private employers is Chicago Mathematics & Science Academy Charter School, Inc., which established and operates Chicago Math and Science Academy Charter School in Chicago.

12. The National Labor Relations Board has held in multiple cases, including as recently as August 24, 2016, that employers of charter school employees, regardless of state law provisions, are [private] employers "within the meaning of Section 2(2) of the National Labor Relations Act."

13. The Board's retirement plans are subject to ERISA because they include more than *de minimis* participants who are employees of private companies.

14. Defendant had one or more employee pension plans ("Plans") at relevant times which were available to its employees who had similar positions as Plaintiff.

15. At least one of the Plans constitutes an "employee welfare benefit plan," as that term is defined in 29 U.S.C. § 1102.

16. On or about August 13, 2013, the Board admitted in prior litigation, case No. 13-cv-04413, that CPS' [retirement] Plan constitutes an "employee welfare benefit plan," as that term is defined in 29 U.S.C § 1102.

17. At relevant times, Defendant had a policy in place whereby teachers like Plaintiff could earn a higher salary by obtaining additional college credits. Under the policy, in order to earn a higher salary, a teacher was required to submit an application to

3

Defendant's Human Resources Department together with a transcript evidencing the additional college credits.

18. Around June 2015, Plaintiff obtained additional college credits that entitled her to additional salary.

19. Around July 15, 2015, Plaintiff submitted an application to Defendant for additional salary based on the additional college credits that she earned. Defendant did not acknowledge receipt of Plaintiff's application and did not give her a salary increase, but kept the application on file.

20. Around September 2015, Plaintiff was advised by her union to file a duplicate application for a salary increase.

21. Around September 2015, Plaintiff's filled out another application for an increase in salary. The application was not dated.

22. Around September 2015, unbeknownst to Plaintiff, the union representative put a date of June 29, 2015 on the second application and submitted it to Defendant.

23. On June 9, 2017, through its employees and agents, including Ciesil, Claypool and Marmer, Defendant initiated an administrative proceeding to terminate Plaintiff's employment. It falsely alleged that around December 15, 2015, upon Plaintiff's request, the Chicago Teachers Union filed a grievance on Plaintiff's behalf contending that Defendant should process her application because she submitted it on June 29, 2015; and that Plaintiff knowingly allowed the application to be submitted to the Board in order to obtain additional income. The Defendant falsely alleged that Plaintiff had committed fraud and theft.

4

24. On June 12, 2017, Plaintiff requested a hearing on Defendant's charges.

25. On June 19, 2017, Defendant suspended Plaintiff without pay and benefits that are subject to ERISA, effective June 21, 2017.

26. On February 20, 2018, a hearing officer found after holding a hearing around November 7, 2017 that Defendant's charges were not sustained and recommended that the charges against Plaintiff be withdrawn and that Plaintiff be reinstated and made whole with full backpay and benefits. Plaintiff was represented by an attorney at the hearing, and, as a result, incurred costs and fees.

27. On March 21, 2018, Defendant, through its employees, including Jackson and Joseph Moriarty ("Moriarty"), adopted and published a warning resolution falsely accusing Plaintiff of engaging in "unsatisfactory conduct," based on the same facts that the hearing officer rejected.

28. On or about September 30, 2017, Defendant sent Plaintiff a collection letter demanding payment for insurance premiums of about $300.82 within 30 days in order to avoid "coverage termination." Defendant stated that if payment was not received by October 31, 2017, "coverage will be terminated."

29. Plaintiff did not send a payment because she could not afford to make any.

30. Plaintiff filed for bankruptcy protection and incurred attorney's fees in part because she no longer had income from her job with Defendant. As a result of the bankruptcy filing, Plaintiff suffered severe emotional pain and suffering.

31. On or about December 31, 2017, Defendant sent Plaintiff a collection letter demanding payment for insurance premiums of $1,204.48 within 30 days in order to

5

avoid "coverage termination." Plaintiff did not send a payment because she believed

her insurance coverage had been terminated on October 31, 2017. Defendant's letter

caused Plaintiff to suffer further emotional suffering and anxiety.

## COUNT ONE
## VIOLATION OF ERISA

32. Plaintiff repeats the allegations of paragraphs 1-31 of this complaint as though

fully alleged herein.

33. At relevant times, Plaintiff was a beneficiary of an ERISA Plan within the

meaning of 29 U.S. Code § 1132(a).

34. Defendant violated Plaintiff's rights under ERISA by improperly denying her

retirement, welfare and medical benefits from June 21, 2017 until April 2, 2018 based on

a state law, 105 ILCS 5/34-85(a)(2), that is preempted by ERISA.

35. 105 ILCS 5/34-85(a)(2) relates to ERISA plans because it is a state law that

provides Defendant's employees with a mechanism to enforce their rights to health

insurance and retirement benefits through a hearing, it provides an alternate

enforcement mechanism of ERISA benefits, it was specifically designed to affect, and

affects employee ERISA benefit plans.

36. 29 U.S.C. § 1144(a) preempts 105 ILCS 5/34-85(a)(2) because 105 ILCS 5/34-

85(a)(2) relates to an employee benefit plan that is defined under 29 U.S.C. § 1003, and is

not subject to any applicable exception because a more than *de minimis* number of the

participants of the plan are employees of private companies.

6

37. Plaintiff has requested her back pay and benefits that were wrongfully denied by contacting the Human Resources Department, but Defendant has refused to comply with her request.

38. As a proximate or direct result of Defendant's conduct, Plaintiff has suffered damages, including, the deprivation of her retirement benefits, health benefits, vacation pay and wages, in violation of her rights under ERISA.

WHEREFORE, Plaintiff, Tamika Graham, respectfully requests that, after a jury trial, this Court find in her favor and enter judgment against Defendant, Board of Education of the City of Chicago, for damages caused by the Board's violation of her ERISA rights plus reasonable attorneys' fees and costs of this action.

## COUNT TWO
**RETALIATION IN VIOLATION OF ERISA AND FIRST AMENDMENT**

39. Plaintiff repeats the allegations of paragraphs 1-31 of this complaint as though fully alleged herein.

40. At relevant times, Plaintiff was a beneficiary of an ERISA Plan within the meaning of 29 U.S. Code § 1132(a).

41. Sometime around November 7, 2017, Plaintiff engaged in protected activities by participating as a witness in a proceeding to oppose the suspension of her ERISA benefits.

42. On or about February 2018 and continuing to present, Defendant retaliated against Plaintiff, in violation of Plaintiff's ERISA rights, by withholding her pay and ERISA-benefits, and also publishing a warning resolution with false facts on its website on or about March 2018.

7

43. The deprivation described above that was suffered by Plaintiff would likely deter First Amendment activity in the future. First Amendment retaliation was at least a motivating factor in the Defendant's decision to take retaliatory action.

44. As a proximate or direct result of Defendant's conduct, Plaintiff has suffered damages, including, the deprivation of her retirement benefits, health benefits, vacation pay and wages, in violation of her rights under ERISA and the First Amendment.

WHEREFORE, Plaintiff, Tamika Graham, respectfully requests that, after a jury trial, this Court find in her favor and enter judgment against Defendant, Board of Education of the City of Chicago, for damages caused by the Board's retaliatory conduct against her, in violation of her ERISA and First Amendment rights plus reasonable attorneys' fees and costs of this action.

## COUNT THREE
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

45. Plaintiff repeats the allegations of paragraphs 1-31, 33-37 of this complaint as though fully alleged herein.

46. At relevant times, the Fair Debt Collection Practices Act ("FDCPA") provided in relevant part that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

47. At relevant times, Defendant was a covered debt collector within the meaning of the FDCPA.

48. On or about September 30, 2017, Defendant violated section 807 of the FDCPA when it sent Plaintiff a letter indicating that it would terminate her health insurance coverage on or about October 31, 2017 unless it received about $300, when it in fact

8

knew that it did not intend to do so. Alternatively, on or about December 1, 2017, Defendant violated section 807 of the FDCPA when it sent Plaintiff a letter indicating that it would terminate her health insurance coverage on or about December 31, 2017 unless it received about $1,204.18, when it in fact knew that it did not intend to do so; or, when it in fact knew that Plaintiff did not have health insurance coverage because it had already been terminated since Plaintiff had not sent any payments in response to its prior demand.

49. By sending Plaintiff collection letters between September 1, 2017 and December 31, 2017, some of which are identified and described above, Defendant violated Plaintiff's rights under section 807 by, among other acts, (a) engaging in the false representation of the character, amount or legal status of an alleged debt; (b) engaging in the false representation of the threat to take an action that cannot be legally taken or that is not intended to be taken.

50. As a proximate or direct result of Defendant's conduct, Plaintiff has suffered damages in violation of her rights under the FDCPA.

WHEREFORE, Plaintiff, Tamika Graham, respectfully requests that, after a jury trial, this Court find in her favor and enter judgment against Defendant, Board of Education of the City of Chicago, for damages caused by the Board's retaliatory conduct against her, in violation of rights under the FDCPA plus reasonable attorneys' fees and costs of this action.

9

## COUNT FOUR
## MALICIOUS PROSECUTION/DUE PROCESS VIOLATION

51. Plaintiff repeats the allegations of paragraphs 1-31 of this complaint as though fully alleged herein.

52. Defendant did not have any probable cause to initiate the dismissal proceeding against Plaintiff because it knew, or should have known that Plaintiff had not put a date on her application, it had not announced a freeze on the processing of salary increases based on additional college credits, it was aware of Plaintiff's original application date and Plaintiff was not aware that it had frozen the processing of salary increases based on additional college credits.

53. As a direct or proximate result of the Board's conduct, Plaintiff suffered special damages, including loss of insurance and retirement benefits, loss of wages, pain and suffering from the publication of a warning resolution containing false facts, losses associated with a bankruptcy filing, and enduring the prosecution of a malicious administrative proceeding.

WHEREFORE, Plaintiff, Tamika Graham, demands judgment against the Board of Education of the City of Chicago, in an amount to be determined at trial, for actual and compensatory damages for malicious prosecution and due process violation.

## COUNT FIVE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54. Plaintiff repeats the allegations of paragraphs 1-31 of this complaint as though fully alleged herein.

55. Defendant did not have any probable cause to initiate the dismissal proceeding against Plaintiff because it knew, or should have known that Plaintiff had not put a date

on her application, it had not announced a freeze on the processing of salary increases based on additional college credits, it was aware of Plaintiff's original application date and Plaintiff was not aware that it had frozen the processing of salary increases based on additional college credits.

56. Defendant's conduct as described in this complaint was extreme and outrageous.

57. The defendant intended to inflict severe emotional distress or knew that there was at least a high probability that its conduct would inflict severe emotional distress upon Plaintiff.

58. The defendant's conduct did cause Plaintiff to suffer severe emotional distress, including anxiety caused by the threat of revocation of her teaching licenses and the stigma associated with false allegations of fraud and theft.

59. As a direct or proximate result of the Board's conduct, Plaintiff suffered damages, including loss of insurance and retirement benefits, loss of wages, pain and suffering from the publication of a warning resolution containing false facts, losses associated with a bankruptcy filing, and enduring the prosecution of a malicious administrative proceeding.

WHEREFORE, Plaintiff, Tamika Graham, demands judgment against the Board of Education of the City of Chicago, in an amount to be determined at trial, for actual and compensatory damages for intentional infliction of emotional distress.

**COUNT SIX**
**VIOLATION OF THE ILLINOIS WAGE PAYMENT COLLECTIONS ACT**

60. Plaintiff repeats the allegations of paragraphs 1-31 of this complaint as though fully alleged herein.

11

61. At all relevant times, the Illinois Wage Collection and Payment Act, 820 ILCS 115/1, et. seq. ("IWCPA") was in force as good Illinois law.

62. At relevant times, the IWCPA provided in relevant part that "[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period."

63. At relevant times, Plaintiff was a tenured teacher employed by Defendant whose employment could only be terminated for cause after a due process hearing.

64. Defendant Board failed to pay Plaintiff compensation to which she was contractually or legally entitled between June 21, 2017 and April 2, 2018.

65. The conduct of the Board as described above violated Plaintiff's rights under the IWCPA when the Board withheld or failed to timely pay her earned compensation or compensation to which she was legally entitled.

66. The conduct of the Board and its agents as described above in violating Plaintiff's rights under the IWCPA was wanton and willful.

67. As a proximate or direct result of the conduct of the Board that violated her rights as described above under the IWCPA, Plaintiff suffered damages, including but not limited to loss of contractually-guaranteed income and attorney's fees.

WHEREFORE, Plaintiff, Tamika Graham, demands judgment against the Board of Education of the City of Chicago, in an amount to be determined at trial, for her unpaid compensation, 2% of her unpaid compensation beginning June 21, 2017 to present and reasonable attorneys' fees, expenses and costs for violation of the IWCPA.

12

## JURY DEMAND

56. Plaintiff hereby demands a trial by jury of twelve pursuant to Rule 38(b) of the

Federal Rules of Civil Procedure on all triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Tamika Graham, accordingly and respectfully demands judgment

against Board of Education of the City of Chicago as follows:

57. That Plaintiff be awarded actual and compensatory damages;

58. That Plaintiff be awarded reasonable attorneys' fees, costs and expenses incurred

in this action;

59. That Plaintiff be awarded equitable and/or injunctive relief as to each

appropriate count detailed above;

60. That Plaintiff be awarded any such further additional equitable and/or legal

relief as this Court deems appropriate under the circumstances.

Respectfully Submitted

Tanika Graham 7.11.18

Tamika Graham, *Pro Se*
5910 S. Green Street
Chicago, IL 60621

13