IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMIKA GRAHAM, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) No. 18 C 4761 ) |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) Judge Virginia M. Kendall ) ) |
| *Defendant.* | ) ) |

# MEMORANDUM OPINION AND ORDER

Tamika Graham is a teacher for the Board of Education of the City of Chicago. Those, like Graham, who take additional college courses are eligible for higher salaries if they submit the required application and transcript to Human Resources. When Graham allegedly permitted her Union to submit a back-dated application to procure supplemental income and then asked the Union to file a grievance when the Board did not act on her application, the Board initiated an administrative proceeding to terminate Graham. The Board suspended Graham without pay and benefits shortly thereafter only to have a hearing officer reinstate her with backpay and benefits. Graham sued the Board in federal court alleging that the Board broke the law when it suspended her. Because Graham fails to sufficiently plead any of her claims, the Court grants the Board's motion to dismiss the complaint (Dkt. 16) without prejudice. Graham may amend her complaint, if she chooses to do so, on or before 2/13/19.

# BACKGROUND

Tamika Graham is a tenured school teacher that the Board of Education can only terminate for cause. (Dkt. 1 ¶ 7.) She receives an annual salary with benefits for her work. *Id.* ¶ 8. The Board has a policy that enables teachers like Graham to earn a higher salary by taking college classes and earning credit for them. *Id.* ¶ 17. The Board required teachers who wanted to participate in the program to apply to its Human Resources Department with a transcript showing the credits. *Id.* Around June 2015, Graham obtained these credits and a month later applied for the additional salary. *Id.* ¶ 18. The Board did not acknowledge the application, nor did it increase her salary. *Id.* ¶ 19.

Graham's Union advised her to submit a duplicate application in September. *Id.* ¶ 20. Graham filled out another application but did not date it. *Id.* ¶ 21. Unbeknownst to Graham, her Union dated the second application June 29, 2015 and submitted it to the Board. *Id.* ¶ 22. Then, on June 9, 2017, the Board initiated an administrative proceeding to terminate Graham. *Id.* ¶ 23. The Board alleged that Graham asked the Union to file a grievance for her to get the Board to process her application for additional income even though Graham knew that she did not submit it on June 29, 2015. *Id.*

The Board suspended Graham without pay and benefits on June 19, 2017. *Id.* ¶ 25. With Graham on suspension, the Board sent her a collection letter in September demanding payment of insurance premiums to avoid coverage termination. *Id.* ¶ 28. Graham could not afford to pay the Board so she did not comply with its request. *Id.*

¶ 29. She subsequently filed for bankruptcy because of her lack of income, which caused her severe emotional pain and suffering. *Id.* ¶ 30. In December, the Board sent Graham a second collection letter demanding payment for insurance premiums, but Graham did not pay because she believed the Board terminated her coverage after she did not pay the first time. *Id.* ¶ 31.

Graham requested a hearing, and on February 20, 2018, a hearing officer rejected the Board's charges, instead recommending they be withdrawn and that Graham be reinstated with full backpay and benefits. *Id.* ¶¶ 24, 26. On March 21, 2018, the Board published a warning resolution that accused Graham of "unsatisfactory conduct." *Id.* ¶ 27. Graham sued the Board in federal court in July. (Dkt. 1.)

## STANDARD OF REVIEW

A complaint must "'state a claim to relief that is plausible on its face.'" *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a "'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Conclusory statements do not suffice. *See id.* In construing the complaint, the Court accepts all the well-pleaded facts as true and "'draw[s] all reasonable inferences in favor of the plaintiff.'" *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)).

ANALYSIS

Graham states six claims against the Board in her complaint. First, she alleges that the Board violated her rights under the Employee Retirement Income Security Act (ERISA) when it denied her benefits based on a state law that ERISA preempts. Second, Graham states that the Board breached ERISA and the First Amendment when it retaliated against her after she opposed her suspension without benefits in a hearing by continuing to withhold compensation and publishing a warning resolution. Third, Graham asserts that the Board contravened the Fair Debt Collection Practices Act (FDCPA) when it sent Graham letters indicating that it would terminate her health insurance when it did not intend to do so. Fourth and fifth, Graham argues that the Board is liable to her in tort for malicious prosecution and intentional infliction of emotional distress arising out of the dismissal hearing. Sixth and finally, Graham contends that the Board did not comply with the Illinois Wage Payment Collections Act (IWPCA) when it failed to pay her earned compensation during her suspension.

## I. ERISA

The Board argues that it manages a governmental benefits plan making it not subject to ERISA. On its own terms the statute does not cover a governmental plan, *see* 29 U.S.C. § 1132(a)(1)(B), which it defines as a "plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of the foregoing," 29 U.S.C. § 1002(32). As an initial matter, although the Seventh Circuit once

stated that the question of whether a purported ERISA plan is a governmental plan implicates a district court's subject matter jurisdiction, *see Shannon v. Shannon*, 965 F.2d 542, 546 (7th Cir. 1992), more recent developments in the Supreme Court's jurisprudence indicate that the proper procedural vehicle is the one the Board utilized here: a motion to dismiss for failure to state a claim under Rule 12(b)(6), *see Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 343–44, 46–47 (5th Cir. 2014).

Graham does not dispute the general proposition that ERISA exempts a governmental plan, which implies that she is not arguing that the Board is not a governmental agency or instrumentality. *See Shannon*, 965 F.2d at 546 n.7 (distinguishing between whether an entity is governmental agency or instrumentality and whether the Plan is not a governmental plan and calling the latter "the more frequently litigated issue"). Perhaps it goes without saying, but for the sake of taking the first analytical step, the Board is an agency or instrumentality of the City of Chicago, a political subdivision of the state of Illinois. *See, e.g.*, *Saunders v. Davis*, No. 15-CV-2026 (RC), 2016 WL 4921418, at *9 (D.D.C. Sept. 15, 2016) ("Multiple courts [and the Department of Labor] have found that school districts are 'political subdivisions' of a state government for the purposes of this analysis.") (collecting cases). Indeed, the Illinois Legislature statutorily created the Board as a "'body politic and corporate,'" making it a governmental unit itself. *Rottman v. Illinois State Officers Electoral Bd.*, 2018 IL App (1st) 180234, ¶ 20 (internal citation omitted); *see Albert v. Bd. of Educ. of City of Chicago*, 2014 IL App (1st) 123544, ¶ 52 (calling the Board a "local governmental bod[y]").

The question becomes, then, whether the Plan is in fact a governmental plan. Graham argues that more than a *de minimis* number of non-governmental employees participate in the plan, namely charter schools' employees, which takes it out of the exemption. But on the face of the statute, "'a plan need only be established *or* maintained by a governmental entity in order to constitute a governmental plan.'" *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1353 (10th Cir. 2009) (citation omitted) (emphasis in original). Graham does not claim that the Board does not establish or maintain the plan.

As stated previously, "the Board [. . .] administers CPS." *See, e.g., McDaniel v. Bd. of Educ. of City of Chicago*, 956 F. Supp. 2d 887, 895 (N.D. Ill. 2013). Furthermore, "exclusive governmental funding is enough to constitute governmental establishment of a plan." *Gualandi v. Adams*, 385 F.3d 236, 243–44 (2d Cir. 2004). Graham effectively concedes that the Board paid the insurance premiums under the health care plan because she complains about it sending her letters regarding those matters. *See Fromm v. Principal Health Care of Iowa, Inc.*, 244 F.3d 652, 653–54 (8th Cir. 2001). These considerations weigh in favor of concluding that the Board establishes or maintains the plan.

Even taking Graham's allegations of more than *de minimis* participation by charter schools employees to be true (as the Court must), that still does not count the plan as non-governmental because she does not claim that private employers establish or maintain the plan. Several dated and non-binding district court cases conduct Graham's *de minimis* inquiry (potentially borne out of Department of Labor

guidance) but they do not all agree on outcomes. *See, e.g., Hall v. Maine Mun. Employees Health Tr.*, 93 F. Supp. 2d 73, 80–81 (D. Me. 2000) (holding the number of non-governmental employees to be *de minimis*). More importantly, that calculus is simply unfaithful to ERISA's text and the principles of federalism that underlie the statute. As a final matter, if Graham thinks she can replead and chooses to do so, it is worth noting that "an ERISA claim for benefits due ordinarily should be brought against the employee-benefits plan itself." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013). Accordingly, the Court grants the Board's motion to dismiss Count I.

## II. Retaliation (under ERISA and the First Amendment)

Although the Board does not address the ERISA retaliation claim alleged in Count II, the Court must dismiss this claim as it did the previous one because there can be no retaliation under ERISA if the statute does not cover the governmental plan at issue here. *See Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 892 (7th Cir. 2001) (stating that "an ERISA plan is a condition precedent to an ERISA retaliation claim"). As far as the First Amendment claim goes, the Board argues that Graham spoke as a public employee on a matter of private concern, leaving her speech unprotected by the Constitution.

The Court can assume for the sake of argument that Graham spoke as a private citizen at her dismissal hearing, although that is a far cry from being a sure thing. *See Forgue v. City of Chicago*, 873 F.3d 962, 967 (7th Cir. 2017); *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013). The issue then is whether her speech was a matter of public or private concern. "[I]f the objective of the speech—

as determined by content, form, and context—is simply to further a purely personalized grievance, then the speech does not involve a matter of public concern." *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 986 (7th Cir. 2013) (citing *Bivens v. Trent*, 591 F.3d 555, 561–62 (7th Cir.2010) and *Gustafson v. Jones*, 290 F.3d 895, 908 (7th Cir. 2002)); *see Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014). "But if an objective of the speech was also to bring about change with public ramifications extending beyond the personal, then the speech does involve a matter of public concern." *Id.*

Here, the objective of Graham's speech was to challenge her dismissal. In other words, the objective was to "further her personal interest in remedying an employee grievance and [ ] her speech did not address a matter of public concern." *Kubiak v. City of Chicago*, 810 F.3d 476, 483 (7th Cir. 2016), *cert. denied sub nom. Kubiak v. City of Chicago, Ill.*, 137 S. Ct. 491 (2016). Her speech dealt with an individual personnel dispute and grievance, thus it was irrelevant to any public evaluation of the Board's performance. *See Alves v. Bd. of Regents of the Univ. Sys. of Georgia*, 804 F.3d 1149, 1166 (11th Cir. 2015); *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 467 (3d Cir. 2015); *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

Graham cannot recast her personal grievance as a call for policy change in her response to the Board's motion to dismiss because she did not allege that in her complaint and the hearing officer's decision shows that this was only a grievance anyway. *See Rose v. Board of Election Com'rs for City of Chicago*, 815 F.3d 372, 376 n.3 (7th Cir. 2016) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen*

*Co.*, 631 F.3d 436, 448 (7th Cir. 2011)). The First Amendment does not empower public employees to "'to constitutionalize the employee grievance.'" *Olendzki v. Rossi*, 765 F.3d 742, 747 (7th Cir. 2014) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) (citation omitted)). The Court therefore grants the Board's motion to dismiss Count II.

### III. FDCPA

The Board argues that it is not a debt collector and thus the FDCPA does not apply to it. The Act defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *see Neff v. Capital Acquisitions & Mgmt. Co.*, 352 F.3d 1118, 1121–22 (7th Cir. 2003). "[T]hose who seek only to collect for themselves loans they originated generally do not" qualify as debt collectors. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017).

In this case, the Board's principal purpose is not to collect debts, the Board does not regularly collect debts owed to another, and Graham failed to allege that the Board collects its own debts using a name other than its own as if it were a debt collector. *See Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 466 (7th Cir. 2018). In plain terms, the Board is not a debt collector and therefore it is not subject to liability under the Act. *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016). Arguing that governmental entities, a school board here, are debt

collectors often proves to be a tough row to hoe. *See, e.g.*, *Hayes v. Shelby Cty. Tr.*, 971 F. Supp. 2d 717, 730 (W.D. Tenn. 2013); *Passa v. City of Columbus*, 748 F. Supp. 2d 804, 811 (S.D. Ohio 2010). The Court accordingly grants the Board's motion to dismiss Count III.

## IV. Malicious Prosecution

The parties disagree about whether Graham stated a malicious prosecution claim under state or federal law, in addition to whether she asserted an independent due process claim (either procedural or substantive). Count IV of Graham's complaint, although confusingly styled, clearly tracks the elements of malicious prosecution, a tort in Illinois. Rightly so because the Seventh Circuit does not recognize a freestanding malicious prosecution claim under the federal Constitution. *See Stone v. Wright*, 734 F. App'x 989, 990 (7th Cir. 2018).

That said, "aspects of that state-law tort may play roles in" federal constitutional litigation, *id.*, seeing that "there are other constitutional rights (*e.g.*, such as those under the Due Process Clause and the Fourth Amendment) that protect people against abusive arrests, fabrication of evidence, etc.," *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018), *cert. denied*, No. 17-1654, 2018 WL 2876803 (U.S. Oct. 29, 2018), and *cert. denied sub nom. Vantlin v. Hurt*, No. 17-1655, 2018 WL 2876853 (U.S. Oct. 29, 2018). This interplay is likely the source of the parties' confusion. With that ironed out, the Court will turn to the state-law cause of action.

To state a claim for malicious prosecution under Illinois law, a plaintiff must allege: "'(1) the commencement or continuation of an original criminal or civil judicial

proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice on the part of defendant; and (5) damages.'" *Spicer v. Spicer*, 2017 IL App (1st) 161378-U, ¶ 20, *appeal denied*, 98 N.E.3d 36 (Ill. 2018) (citation omitted); *see Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018). The absence of any one element prohibits a plaintiff from pursuing the claim. *See Colbert v. City of Chicago*, 851 F.3d 649, 654–55 (7th Cir. 2017), *cert. denied sub nom. Colbert v. City of Chicago, Ill.*, 138 S. Ct. 657 (2018) (internal citations and quotations omitted).

Here, the Board first argues that internal employment proceedings or administrative proceedings like the Board's dismissal proceedings do not qualify as civil judicial proceedings under Illinois law. Maybe so, but the Board does not offer any authority to support that proposition. These types of proceedings suffice in at least some jurisdictions. *See, e.g., Kauffman v. A. H. Robins Co.*, 448 S.W.2d 400, 403 (Tenn. 1969); *Hardy v. Vial*, 311 P.2d 494, 496 (Cal. 1957). Regardless, Graham does not adequately allege lack of probable cause because she stated that a Union representative backdated her second application and submitted it to the Board. There is no plausible support for Graham's claim that the Board knew or should have known that it was the Union representative and not her that did that. This is a "'set of facts that would lead a person of ordinary caution and prudence to believe that he had a justifiable claim against the defendant.'" *Grundhoefer v. Sorin*, 2018 IL App (1st) 171068, ¶ 14 (citation omitted). Additionally, and relatedly, there are no allegations that the Board acted out of malice against Graham. She must do more for malice

than replead the lack-of-probable-cause element. *See Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011). These deficiencies are fatal to the claim.

The Court therefore grants the Board's motion to dismiss Count IV. Should Graham choose to amend her complaint, and because the underlying proceeding here is civil in nature, Graham of course must plead some special injury "'beyond the anxiety, loss of time, attorney fees, and necessity for defending one's reputation, which are an unfortunate incident of many (if not most) lawsuits.'" *Id.* (citation omitted). Put differently, she must do more than allege ordinary trouble and expense. *See Spicer*, 2017 IL App (1st) 161378-U, ¶ 43.

## V. IIED

The Board contends that it is immune from Graham's IIED claim. Section 2-201 of the Tort Immunity Act states: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. It follows, then, that for the Board to enjoy immunity under the Act, its initiation of Graham's dismissal proceeding must be a product of a "determination of policy" and "the exercise of discretion." *Id.*; *see Doyle v. Vill. of Tinley Park*, 2018 IL App (1st) 170357, ¶ 39.

First, "policy determinations are decisions that require a governmental employee 'to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.'" *Doyle*, 2018 IL App (1st) 170357, ¶ 39

(citations omitted). Second, discretionary acts "'involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed.'" *Id.* (citations omitted). Ministerial acts, by contrast, do not require reference to the official's discretion and instead involve only the execution of a prescribed task. *See id.*; *Castillo v. Bd. of Educ. of City of Chicago*, 2018 IL App (1st) 171053, ¶ 14, *appeal denied*, 108 N.E.3d 800 (Ill. 2018).

Municipal decisions regarding the hiring, firing, discipline, and supervision of employees are discretionary policy decisions. *See Mann v. City of Chicago*, 182 F.3d 922, 1999 WL 510748 at *2 (7th Cir. 1999); *Brooks v. Daley*, 2015 IL App (1st) 140392, ¶ 27; *see, e.g.*, *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 501, DuPage Cty., Illinois*, 238 F. Supp. 3d 1054, 1065 (N.D. Ill. 2017), *motion to certify appeal granted sub nom. Breuder v. Bd. of Trus-tees of Cmty. Coll. Dist. No. 502, DuPage Cty., Illinois*, No. 15-CV-09323, 2017 WL 5905707 (N.D. Ill. May 5, 2017), *and aff'd in part, appeal dismissed in part sub nom. Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, 888 F.3d 266 (7th Cir. 2018); *LaPorta v. City of Chicago*, 277 F. Supp. 3d 969, 998–99 (N.D. Ill. 2017); *Doe v. Roe*, No. 12 C 9213, 2013 WL 2421771, at *7 (N.D. Ill. June 3, 2013); *Collins v. Bd. of Educ. of N. Chicago Cmty. Unit Sch. Dist. 187*, 792 F. Supp. 2d 992, 999 (N.D. Ill. 2011). Although these decisions do not always clearly distinguish between policy determinations and discretionary acts, read together, they fairly demonstrate that the Tort Immunity Act shields the Board's decision to initiate Graham's dismissal proceeding.

Even assuming the Act did not protect the Board, Graham would still fail to allege her IIED claim because initiating a dismissal proceeding does not constitute extreme and outrageous conduct. *See Richards v. U.S. Steel*, 869 F.3d 557, 567 (7th Cir. 2017) (explaining that the standard is even higher in the employment context and questioning of job performance, discipline, and even terminations are unavoidable aspects of the working world). The dismissal proceeding also does not show that the Board intended to inflict severe emotional distress. If it did, nearly every employee would have a cause of action. *See id.* Accordingly, the Court grants the Board's motion to dismiss Count V.

**VI. IWPCA**

The Board first asserts that the collective bargaining agreement controls wage-payment claims and not the IWPCA. Second, the Board claims that, even if the IWPCA did apply on its face, the Labor Management Relations Act (LMRA) nonetheless preempts it. Starting with the state statute, it provides that it does not apply if there is a valid collective bargaining agreement. *See* 820 Ill. Comp. Stat. Ann. 115/4. So understood, collective bargaining agreements control corresponding wage-payment claims, not the IWPCA or any other state statute for that matter. *See Carletto v. Quantum Foods*, No. 1-05-3163, 2006 WL 2018250, at *4–6 (Ill. App. Ct. June 5, 2006) (discussing *Kostecki v. Dominick's Finer Foods, Inc. of Illinois*, 836 N.E.2d 837 (2005), *Gelb v. Air Con Refrigeration & Heating, Inc.*, 826 N.E.2d 391 (2005), and *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912 (N.D. Ill. 2003)).

If the collective bargaining agreement governs the disposition of Graham's statutory wages claim, then Section 301 of the LMRA preempts her state-law cause of action because it requires this Court to interpret a private contract. *See Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 841–42 (7th Cir. 2015); *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015); *Olson v. Bemis Co.*, 800 F.3d 296, 300–01 (7th Cir. 2015); *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 797 (7th Cir. 2013); *Copeland v. Penske Logistics LLC*, 675 F.3d 1040, 1044 (7th Cir. 2012). Therefore, Graham does not state a claim for relief under the IWPCA, so the Court grants the Board's motion to dismiss Count VI. As a final point, the Court need not address the "fees act claim" referenced in Graham's response to the Board's motion to dismiss because Graham did not allege it in her complaint. *See Rose v. Board of Election Com'rs for City of Chicago*, 815 F.3d 372, 376 n.3 (7th Cir. 2016) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011)).

## CONCLUSION

For the reasons stated above, the Court grants the Board's motion to dismiss all claims alleged in the complaint (Dkt. 16) without prejudice. Graham may replead consistent with this opinion by 2/13/19.

_____
Virginia M. Kendall
United States District Judge

Date: January 16, 2019