IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMIKA GRAHAM, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) No. 18 C 4761 |
| | ) |
| BOARD OF EDUCATION OF THE | ) Judge Virginia M. Kendall |
| CITY OF CHICAGO, HEALTH | ) |
| CARE SERVICES CORPORATION, | ) |
| and CHICAGO TEACHERS UNION, | ) |
| LOCAL No. 1, | ) |
| | ) |
| *Defendants.* | ) |

**MEMORANDUM OPINION AND ORDER**

Tamika Graham sued the Board of Education of the City of Chicago mainly because it tried (and continues to try) to collect insurance premiums that Graham failed to pay while suspended from June 2017 to February 2018. (Dkt. 1.) The Court previously dismissed Graham's complaint because it failed to state a claim. (Dkt. 41.) Graham then amended her complaint asserting her original claims—in addition to several new ones—against the Board and two new defendants: Health Care Services Corporation (HCSC) and Chicago Teachers Union, Local No. 1. (Dkt. 51.) Graham later voluntarily dismissed Count XII alleged against the Board and the Union under Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Dkt. 55.)

The Board again moved to dismiss arguing Graham failed to cure the deficiencies the Court identified in her original complaint. (Dkt. 64.) It also contended, as did HCSC in its own motion to dismiss (Dkt. 66), that Graham never lost health

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMIKA GRAHAM, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) No. 18 C 4761 |
| | ) |
| BOARD OF EDUCATION OF THE | ) Judge Virginia M. Kendall |
| CITY OF CHICAGO, HEALTH | ) |
| CARE SERVICES CORPORATION, | ) |
| and CHICAGO TEACHERS UNION, | ) |
| LOCAL No. 1, | ) |
| | ) |
| *Defendants.* | ) |

**MEMORANDUM OPINION AND ORDER**

Tamika Graham sued the Board of Education of the City of Chicago mainly because it tried (and continues to try) to collect insurance premiums that Graham failed to pay while suspended from June 2017 to February 2018. (Dkt. 1.) The Court previously dismissed Graham's complaint because it failed to state a claim. (Dkt. 41.) Graham then amended her complaint asserting her original claims—in addition to several new ones—against the Board and two new defendants: Health Care Services Corporation (HCSC) and Chicago Teachers Union, Local No. 1. (Dkt. 51.) Graham later voluntarily dismissed Count XII alleged against the Board and the Union under Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Dkt. 55.)

The Board again moved to dismiss arguing Graham failed to cure the deficiencies the Court identified in her original complaint. (Dkt. 64.) It also contended, as did HCSC in its own motion to dismiss (Dkt. 66), that Graham never lost health

insurance coverage, so the defendants never needed to notify her that she could elect to continue her benefits under federal law. Because Graham failed to cure the deficiencies in her original complaint, and her new claims are facially implausible, the Court grants the Board's motion to dismiss (Dkt. 64) with prejudice and HCSC's motion without prejudice (Dkt. 66). Graham may replead against HCSC, if she is able to, by 7/15/2019.

I

The Court assumes the parties' familiarity with the relevant facts as recounted in the first opinion dismissing Graham's claims in her original complaint. *See Graham v. Bd. of Educ. of City of Chicago*, No. 18 C 4761, 2019 WL 215098, at *1 (N.D. Ill. Jan. 16, 2019). Graham repleaded the same first eight counts against the Board that she alleged in her original complaint, adding little to no new facts. The Court will briefly cover each count from the original complaint.

Before recapping, though, a preliminary issue merits discussion. The purpose of an amended complaint is to cure the deficiencies in the original complaint. *See Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1052–53 (7th Cir. 2019). It is not to repeat the same allegations that the Court has already decided do not allow it to draw the reasonable inference that the Board is liable for the misconduct alleged. *See Chestnut v. Finck*, 722 F. App'x 115, 118 (3d Cir. 2018). In repleading, it is simply not enough to state conclusions that parrot the Court's legal analysis and are "devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see*

*Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013). Keeping that in mind, the Court turns to its consideration of the amended complaint.

A

First, Graham pleads minimal new factual content alleging that the Board's benefit plan is not a governmental plan, thus subjecting it to the Employee Retirement Income Security Act (ERISA). Seeking to cure this defect, Graham adds the conclusory statement that the Board's benefits plans "are funded and maintained in part by private companies that own and operate charter schools in Chicago." (Dkt. 51 ¶ 16.) Graham goes on to plead how charter school employees were eligible to participate in—and in some cases did participate in—the Board's benefit programs. *Id.* ¶¶ 13–14.

As the Court ruled previously, the statute's text does not hinge on participation; it hinges on whether the government establishes or maintains the plan. *See* 29 U.S.C. § 1002(32); *Koval v. Washington Cty. Redevelopment Auth.*, 574 F.3d 238, 242 (3d Cir. 2009) (internal citations omitted). Beyond that, "'a plan need only be established *or* maintained by a governmental entity in order to constitute a governmental plan.'" *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1353 (10th Cir. 2009) (internal citation omitted) (emphasis in original). Here, Graham effectively concedes that the Board established the plan while partially maintaining it alongside private partners. (Dkt. 51 ¶ 16.)

Even accepting that as true, it does not much matter that private charter school companies partially maintain—through funding or otherwise—the plan. The

Board need only have established the plan for the governmental exemption to apply. *See Hightower v. Texas Hosp. Ass'n*, 65 F.3d 443, 451 (5th Cir. 1995); *see also Roy v. Teachers Ins. & Annuity Ass'n*, 878 F.2d 47, 49–50 (2d Cir. 1989) (illustrating *Rose v. Long Island Railroad Pension Plan*, 828 F.2d 910 (2d Cir.1987), *cert. denied*, 485 U.S. 936 (1988)); *Silvera v. Mut. Life Ins. Co. of New York*, 884 F.2d 423, 427 (9th Cir. 1989); *Feinstein v. Lewis*, 477 F. Supp. 1256, 1260 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 573 (2d Cir. 1980). Moreover, the Board allegedly pays the employer portion of insurance premiums under the plan, which means it further establishes it even though another entity supposedly administers it. *See Fromm v. Principal Health Care of Iowa, Inc.*, 244 F.3d 652, 653 (8th Cir. 2001). Therefore, the plan is not subject to ERISA, and Graham failed to state claims upon which the Court can grant her relief in Counts I and II.

B

Second, Graham fails to assert new facts that make her First Amendment claim plausible. Graham again pleads that she petitioned "for a hearing to challenge the circumstances surrounding her suspension . . ." (Dkt. 51 ¶ 63.) Then Graham concludes that she did this "in part . . . to reform the Chicago Public Schools system . . . [and] to advance a political or social idea of interest to the community . . ." *Id.* ¶¶ 63–64. The amended complaint remains devoid of any factual content indicating that Graham's testimony at the hearing was in her capacity as a private citizen and not a personally aggrieved employee. *See McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013).

Graham also pleads no facts that show how her suspension was a matter of public concern rising to the level of a political or social idea. *See Kubiak v. City of Chicago*, 810 F.3d 476, 483 (7th Cir. 2016). Indeed, it is unclear what policy Graham allegedly sought to challenge: the so-called suspension policy or the public speech policy. Confusion aside, individual personnel disputes are just not publicly relevant. Graham participated as a witness in the hearing on her appeal of the Board's termination recommendation. Graham failed to allege how her speech motivates the Board's decisionmaking. *See Milliman v. Cty. of McHenry*, 893 F.3d 422, 430 (7th Cir. 2018). Consequently, Graham cannot plausibly state her First Amendment claim in Count III.

C

Third, Graham's only pleaded fact that supports her Fair Debt Collection Practices Act (FDCPA) claim that the Board regularly attempts to collect debts owed to another (the insurer) is that the Board supposedly sent her letters requesting premium payments. (Dkt. 51 ¶¶ 34–35, 81.) But Graham owes the Board and the Board potentially owes the insurer. The fact that the Board sought to recoup debts that Graham owed it as her creditor means the Board was not a debt collector within the scope of the Act. *See Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 466 (7th Cir. 2018) (internal citations omitted). Graham accordingly failed to state a FDCPA claim in Count IV.

D

Fourth, in Graham's amended complaint, she parrots most of the malicious prosecution factual allegations that the Court held legally insufficient in dismissing the claim from her original complaint. The reasons the Board recommended Graham's termination hold still. Even assuming the Board knew that it was a union representative and not Graham that backdated Graham's second application for a salary increase, that does not mean that Graham did not explicitly or implicitly condone this conduct. (Dkt. 51 ¶ 29.) Graham thus failed to adequately plead that the Board lacked probable cause to initiate an administrative proceeding against her. *See Samoylovich v. City of Chicago*, 2019 IL App (1st) 172962-U, ¶¶ 46–47.

Moreover, although Graham concludes the Board acted with malice, Graham neglected to cure the defective special injury element: there is no factual content that Graham suffered a worse fate than those who must defend lawsuits, not to mention administrative proceedings. *See Samovlovich*, 2019 IL App (1st) 172962-U at ¶ 40; *Indep. Plus, Inc. v. Walter*, 2012 IL App (1st) 111877, ¶¶ 18–26; *Howard v. Firmand*, 880 N.E.2d 1139, 1144–45 (2007). Therefore, Graham's malicious prosecution claim in Count V is facially implausible.

E

Fifth, Graham alleges the Board violated the Due Process Clause by suspending her without notice and a hearing. In the same breath, Graham acknowledges the Board "subject[ed] [her] to a protracted dismissal proceeding . . ." Dkt. 51 ¶ 93; *see id.* ¶¶ 29–31. The Board notified Graham of the charges against her, and ultimately,

the hearing resulted in Graham's reinstatement. That internal inconsistency alone renders Graham's due process claim implausible.

On top of that, a public educational institution is generally within its rights to suspend an employee without pay pending a later hearing. *See Hess v. Bd. of Trustees of S. Illinois Univ.*, 839 F.3d 668, 674 (7th Cir. 2016) (internal citation omitted); *see also Hudson v. City of Chicago*, 374 F.3d 554, 562 (7th Cir. 2004). In this setting, the filing of charges ensures that there were reasonable grounds for the disciplinary action taken. *See id.*; *Luellen v. City of E. Chicago*, 350 F.3d 604, 615 (7th Cir. 2003). The Board provided Graham with all the process she was due, so she failed to state a claim in Count VI.

### F

Sixth, Graham did not answer the call to cure the pleading deficiencies in her intentional infliction of emotional distress ("IIED") claim. In its previous opinion, the Court ruled that "[m]unicipal decisions regarding the hiring, firing, discipline, and supervision of employees are discretionary policy decisions." *Graham*, 2019 WL 215098 at *6 (collecting cases). That means the Board is immune from Graham's claim under the Tort Immunity Act. Although immunity is an affirmative defense—and the most appropriate vehicle to raise an affirmative defense in is a motion for judgment on the pleadings under Rule 12(c)—dismissal is appropriate under Rule 12(b)(6) when it is clear (as it is here) from the face of the complaint that the defense applies. *See ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 745–46

(7th Cir. 2017); *see also Remet Corp. v. City of Chicago*, 509 F.3d 816, 820 (7th Cir. 2007) (affirming Tort Immunity Act dismissal under Rule 12(b)(6)).

Graham's amended complaint contradicts the Court's judgment, alleging the Board's decision "did not involve a policy determination or an exercise of discretion. The Board has no discretion to initiate dismissal proceedings against innocent employees, and the Board knew that Plaintiff was innocent before it initiated the dismissal proceedings." (Dkt. 51 ¶ 99.) Regurgitating the Court's legal analysis and reaching the opposite conclusion is simply not sufficient. Setting Graham's reinstatement aside, a hearing officer did not adjudicate Graham's "innocence" until *after* the dismissal proceeding.

Even if the Board was not immune under the Act, Graham still failed to replead the intent and outrage elements. Graham tried to argue around the Court's prior decision here too; however, it holds true that initiating a dismissal proceeding does not constitute extreme and outrageous conduct. *See Richards v. U.S. Steel*, 869 F.3d 557, 567 (7th Cir. 2017). Additionally, initiating a dismissal proceeding does not ipso facto demonstrate the Board intended to inflict sever emotional distress because, if it did, every suspended (or fired) employee could sue. *See id.* Graham's amended complaint does not state an IIED claim in Count VII.

G

Seventh, Graham tried to replead her Illinois Wage Payment and Collection Act (IWPCA) claim by asserting that the collective bargaining agreement ("CBA") that covered her employment with the Board "did not contain any provision governing

when employees suspended without pay must be paid their back wages, with interest, if they win their dismissal proceedings." (Dkt. 51 ¶ 109.) But, at the same time, Graham confesses that there is a valid CBA. *Id.* ¶ 44. Graham's hair-splitting about the absence of a specific term is irrelevant because, if there is a CBA, it controls. *See Carletto v. Quantum Foods*, No. 1-05-3163, 2006 WL 2018250, at *4–*6 (Ill. App. Ct. June 5, 2006) (collecting cases). This is perhaps unsurprising considering the Board's duty to follow established procedures to make good on exonerated teachers' back pay and benefits. *See* 105 ILCS 5/34-85(a)(7); *see also Grant v. Bd. of Educ. of City of Chicago*, 668 N.E.2d 1188, 1193 (1996) (reasoning that a right to back pay or the restoration of a benefit does not translate to a right to receive payment at a specific time because the latter right depends on, among other things, the CBA).

Because the CBA governs the payment of Graham's back wages, Section 301 of the Labor Management Relations Act (LMRA) preempts her claim considering that it would require the Court to interpret a private contract. *See Graham*, 2019 WL 215098 at *6 (collecting cases). As set forth above, even though preemption is an affirmative defense, the Court has all it needs to rule on it now. *See ADM All. Nutrition, Inc.*, 877 F.3d at 745–46; *see also Douglas v. Am. Info. Techs. Corp.*, 877 F.2d 565, 573 (7th Cir. 1989) (affirming Rule 12(b)(6) dismissal on Section 301 grounds). Discovery is unnecessary at this point. Graham does not state a claim for relief under the IWPCA in Count VIII. Seeing that Graham's underlying wage action is without merit, her attorney's fees act claim (Count XIII) derived from the wage action is not

viable either. *See People ex rel. Illinois Dep't of Human Rights v. City of Chicago*, 2011 IL App (1st) 101720-U, ¶ 39.

## II

Switching gears, Graham asserts three more new claims in her amended complaint: violation of the Consolidated Omnibus Budget Reconciliation Act (COBRA) against the Board and HCSC (Count IX); violation of the Equal Protection Clause against the Board (Count X); and a request for a declaratory judgment against the Board and HCSC based on COBRA preemption (Count XIII). (Dkt. 51 ¶¶ 114–157.) The Court begins its analysis with COBRA and ends with the Constitution.

### A

COBRA coverage "requires employers to offer laid off or discharged workers an opportunity to continue health insurance (including dental and vision benefits) at their own expense . . . An employer has 44 days after the end of a person's employment to provide notice and essential details." *Pierce v. Visteon Corp.*, 791 F.3d 782, 783–84 (7th Cir. 2015) (internal citations omitted). But the statute only applies after a "qualifying event" that "result[s] in the loss of coverage . . ." 29 U.S.C. § 1163. "Termination" is one such event, as is a "reduction of hours . . ." *Id.* § 1163(2).

In this case, the Board never terminated Graham, but it did reduce her hours when it suspended her without pay. A reduction of hours, though, only constitutes a qualifying event if the employee loses coverage. *See Mlsna v. Unitel Commc'ns, Inc.*, 41 F.3d 1124, 1128 (7th Cir. 1994); *see, e.g.*, *Morehouse v. Steak N Shake, Inc.*, No. 2:16-CV-789, 2018 WL 5811001, at *5 (S.D. Ohio Nov. 6, 2018); *Rosecrance Health*

*Network v. Nationwide Life Ins. Co.*, No. 2:07-CV-1140, 2009 WL 799076, at *9–10 (S.D. Ohio Mar. 23, 2009), *on reconsideration in part*, No. 2:07-CV-1140, 2009 WL 3063391 (S.D. Ohio Sept. 18, 2009) (collecting cases); *Fenner v. Favorite Brand Int'l*, 25 F. Supp. 2d 873–74 (N.D. Ill. 1998).

Here, the Board suspended Graham without pay, but it seems as if Graham still had coverage while suspended. Graham, for her part, contradicts herself in her amended complaint. She starts by stating the Board was sending her bills asking her to pay the employee portion of the premium for this coverage. (Dkt. 51 ¶¶ 34–38.) That indicates Graham was insured. What is more, Graham alleges the letters stated that if she did not pay the premiums, the Board would terminate her coverage. *Id.* ¶¶ 34, 37. Again, that shows Graham had health insurance.

So, too, do the insurance bills that Graham attached to her response in opposition to the Board's motion to dismiss her initial complaint (Dkt. 23-6), which the Court may properly consider. *See Griffin v. TeamCare*, 909 F.3d 842, 844 n.* (7th Cir. 2018) (citing *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (explaining it is a liberal rule, especially when the plaintiff does not contest the authenticity of the materials)). The problem is Graham finishes by asserting that the Board suspended her "participation in the group health insurance plan on or about June 19, 2017, when it reduced her work hours to zero (0)." (Dkt. 51 ¶ 117.)

Basically, this lawsuit comes down to whether Graham needed to "agree" to the Board charging her premiums during her suspension without pay and whether—without those payments—her insurance coverage continued throughout that period.

(Dkt. 51 ¶¶ 35, 37–38.) Most of Graham's claims against the defendants—including the two counts predicated on COBRA—concern factual allegations that the Board denied her benefits without any notice and then tried to collect premium payments for those benefits. *Id.* ¶¶ 45–61, 77–86, 114–119, 149–157; *see* Dkt. 72 at 7–8, 13; *see generally* Dkt. 76.

Graham's position is perhaps best encapsulated in her response in opposition to HCSC's motion to dismiss, wherein she argued:

> she did not pay, and will never pay any premiums that were charged against her while she was suspended without pay because she never agreed to be provided with any health insurance provided by HCSC during her suspension . . . She also alleges that the alleged debts are illegitimate. (C, ¶80). To accept HCSC's position that she had coverage, would be to accept that she agreed to be charged premiums, which she explicitly denies.

(Dkt. 76 at 4–5.) Right off the bat, Graham's framing of the question as one of her consent is misguided.

Graham did not need to request or agree to continued health insurance while suspended. Rather, Graham requested and agreed to health insurance when she signed her employment contract with the Board. Graham's coverage presumably continued unless the Board otherwise notified her. *Cf. Gilbert v. Homar*, 520 U.S. 924, 932 (1997) (explaining that during temporary suspensions without pay, like Graham's, "fringe benefits such as health and life insurance are often not affected at all.").

Whether Graham misunderstood and simply believed she lost coverage while suspended is not the issue here; it is whether she in fact had insurance at the time. *See, e.g., Brown v. Bd. of Educ. of the Shelby Cty. Sch.*, No. 2:13-CV-2586-SHM-DKV,

2014 WL 12887372, at *3 (W.D. Tenn. Dec. 22, 2014) ("However, [the Board] did not have a duty to inform Brown that he had continuing insurance upon his suspension; its only legal duty was to inform Brown of his COBRA rights in case of a qualifying event."). That Graham did not pay premiums does not mean she had no insurance. *See, e.g., id.* at *1 n.1.

Because Graham never lost coverage, COBRA does not control, and the Court need not reach HCSC's argument that Graham failed to allege HCSC was the plan administrator. It is worth noting, however, that COBRA plaintiffs do well to specifically identify who the employer and who the administrator is because they have different statutory roles and responsibilities. *Compare* 29 U.S.C. § 1166(a)(2), *with* § 1166(a)(4). Accordingly, Graham's COBRA claims (Counts IX and XIII) are facially implausible and Count XIII is particularly inappropriate for declaratory relief. *See, e.g., Khan v. Bd. of Educ. of City of Chicago*, No. 17 CV 9300, 2018 WL 6192191, at *7 (N.D. Ill. Nov. 28, 2018). In view of this disposition, the Court need not address HCSC's alternative motion to strike Graham's request for compensatory damages and a jury trial. *But see Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 588 n.2 (7th Cir. 2011), *as modified* (Sept. 22, 2011); *see also, e.g., Divane v. Nw. Univ.*, No. 16 C 8157, 2018 WL 1942649, at *1 (N.D. Ill. Apr. 25, 2018) (collecting cases).

B

Moving to Graham's equal protection claim (Count X), she alleges the Board discriminated against her when it suspended her because she is an African-American female. Graham states that the Board treats Caucasian males differently than her.

As a matter of law, Graham must allege factual content about her proposed comparators that illustrates they are directly comparable in all material respects. *See Guzman v. Brown Cty.*, 884 F.3d 633, 640 (7th Cir. 2018). Factors considered include "'whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 226 (7th Cir. 2017) (internal citations omitted).

Applied here, Graham fails to allege any facts evincing the similar situations of her proposed comparators. Graham relies on two white men, Michael Beyer and Robert Towner, to claim different treatment. (Dkt. 51 ¶¶ 128–29.) But other than mentioning the Board did not suspend them, Graham asserts no facts that reveal these men are similarly situated to her. Graham does not even say whether Beyer and Towner had the same title as her; even that is not enough. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 885 (7th Cir. 2016). This is important because, when it comes to education, not all teachers are created equal. *See Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 810–11 (7th Cir. 2011).

Graham must also plead intent, which she did not do. *See A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend, Indiana*, 498 F. App'x 620, 623 (7th Cir. 2012). In her brief, Graham purports to distinguish between intentional discrimination and disparate treatment. (Dkt. 72 at 14.) But that is a false equivalence: disparate treatment *is*

intentional discrimination. *See Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 437 (7th Cir. 2009); *Am. Nurses' Ass'n v. State of Ill.*, 783 F.2d 716, 722–23 (7th Cir. 1986).

Perhaps Graham is mixing disparate treatment (intentional) up with Title VII's disparate impact (unintentional). *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). If so, she is pleading herself out of court, because disparate impact does not violate the Constitution. *See Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 940 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 568 (2018) (citing *Washington v. Davis*, 426 U.S. 229 (1976) (holding the government violates the Equal Protection Clause only through intentional racial discrimination); *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979) (same with sex discrimination)). Graham therefore failed to adequately plead her equal protection claim in Count X.

### III

In a nutshell, the Court grants the defendants' motions (Dkt. 64, 66) and dismisses all claims in Graham's amended complaint. Specifically, the Court dismisses all claims asserted against the Board (Counts I–XI, XIII) with prejudice. The Court consequently dismisses the Board as a defendant in this case. As to HCSC, the Court dismisses the claims Graham alleged against it (Counts IX and XIII) without prejudice. Graham may amend her complaint for a second time, naming HCSC, by 7/15/2019. But the Court advises Graham to think long and hard about whether she can replead her claims within the contours of this opinion while remaining faithful to her obligations under Rule 11 and the Rules of Professional Conduct. *See Stanard v.*

*Nygren*, 658 F.3d 792, 801 (7th Cir. 2011). Disagreeing with the Court's judgment is not a reason to amend; instead, it is a reason to appeal.

_____
Virginia M. Kendall
United States District Judge

Date: July 2, 2019